Mr. Justice Miller, delivered the opinion of the court. This is is a writ of error to the supreme court of the state of New York, and a motion is made to dismiss it, because the record does not present a question within the twenty-fifth section of the judiciary act. • ■
The case upon which such question is supposed to arise is this: John W. Bates was the owner of forty-one iron safes in the city of Chicago, and on the 3d day of November, 1857, executed and delivered, in the state of New York, to Yan Buskirk and others, a chattel mortgage of said safes. On the 5th day of the same month, Hannibal Green caused to be levied on the same safes a writ of attachment, sued by Lim out of the proper court in Illinois, against the property of Bates. The attachment suit proceeded to judgment, and *19 the safes were sold in satisfation of Green’s debt. Yan Bus-kirk, Green and Bates, were all citizens of New York. Green’s attachment was levied on the safes as the property of Bates, before the possession was delivered to Yan Bus-kirk, and before the mortgage from Bates to him was recorded, and before notice of the existence of said mortgage.
Yan Buskirk afterwards sued Green in the New York courts, for the value of the safes thus sold under his attachment, and Green pleaded the proceeding in the court of Illinois, in bar of the action. Yan Buskirk recovered a judgment, which was affirmed in the highest court .of the state of New York.
It is claimed by the plaintiff in error, that the faith and credit which these proceedings have by law and usage, in the state of Illinois, were denied to them by the decision of the courts of New York, and that in doing so they .decided against a right claimed by him under section 1, article 4, of the constitution, and the act of congress of May 26, 1790, on that subject.
The section of the constitution referred to, declares that “full faith and credit shall be given in each-state to the public acts, records and judicial proceedings of every other state. And that congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.” The act of 1790 (1 U. S. Statutes, 122), was intended to be an exercise of the power conferred upon congress by this section. In the leading case of Mills agt. Duryee (7 Cranch, 481), this court held that the act in question did declare the effect of such ■ judicial records, and that it should be same in other states, as that in which the proceedings were had. In the case of Christmas agt. Bussell, decided at the present term of the court, we have reaffirmed this doctrine, and have further declared that no state can impair the effect thus to be given to judicial proceedings in her sister state, by a statute of limitation intended to operate on demands which may have *20 passed into judgment by such proceedings, as though no such judgment had been rendered.
The record before us contains the pleadings in the case, the facts found by the court, and the conclusions of law arising thereon. Among the latter, the1 court decides, “ that by the law of the state of New York, the title to the property passed on the execution and delivery of the instrument under the facts found in the case, and overreached the subsequent attachment in the state of Illinois, and actual prior possession under it, at the suit of defendant, although he was a creditor, having a valid and fair debt against Bates, and had no notice of the previous assignment and sale. And that the law of the state of New York is to govern the transaction, and not the law of the state of Illinois, where the property was situated.”
Notwithstanding the inverted manner in which the court has here stated its legal conclusions, it seems clear that it did not pass upon the effect of the judicial proceedings' in Illinois upon the title of the property in contest. The case is not varied by declaring that the mortgage made and delivered in New York, overreached the subsequent attachment in Illinois. According to the view taken by that court, Yan Buskirk, the plaintiff, had title to the property under the laws of New York, by virtue of his mortgage, and the question to be decided was, whether the proceedings in Illinois were paramount in them effect upon the title to the New York mortgage.
It is said that Yan Buskirk being no party to the proceedings in Illinois, was not bound by them, but was at liberty to assert his claim to the property in any form that might be open to him ; and strictly speaking this is true. He was not bound by way of estoppd, as he would have been if he had appeared and submitted his claim, and contested the proceedings in attachment. He has a right to set up any title to the property which is superior to that conferred by the attachment proceedings, and he has the further right to show that the property was not liable to the attachment—a right from which he would have been barred, if he had been a *21 party to that suit. _ And this question of the liability of the property in controversy to that attachment, is the question which was raised by the suit in New York, and which was there decided. That court said that this question must be decided by the laws of the state of New York, because that was the domicil of the owner at the time the conflicting claims to the property originated.
We are of opinion that the question is to be decided by the effect given by the laws of Illinois, where the property was situated, to the proceedings in the courts of that state, under which it was sold.
There is no little conflict of authority on the general question as to how far the transfer of personal property by assignment or sale, made in the country of the domicil of the owner, will be held to be valid in the courts of the country where the property is situated, when these are in different sovereignties. The learned author of the Commentaries on the Conflict of Laws, has discussed the subject with his usual exhaustive research. And it may be conceded that as a question of comity, the weight of his authority is in favor of the proposition that such transfers will generally be respected by the courts of the country where the property is located, although the mode of transfer may be different from that prescribed by the local law. The courts of Vermont and Louisiana, which have given this question the fullest consideration, have, however, either decided adversely to this doctrine, or essentially modified it. Such, also, seems to have been the view of the supreme court of Massachusetts. (Lanfear agt. Sumner, 17 Mass. 110; Taylor agt. Boardman, 28 Vermont, 589; Ward agt. Morrison, Id. 593 ; Emmerson agt. Partridye, 27 Id. 8 ; Oliver agt. Townes, 14 Martin’s La. 93 ; Norris agt. Mumford, 4 Id. 20.)
But after all, this is a mere principle of comity between the courts, which must give way when the statutes of the country where property is situated, or the established policy of its laws prescribe to its courts a different rule. The learned commentator, already referred to, in speaking of the law in Louisiana, which gives paramount title to an attach- *22 mg creditor over a transfer made in another state, which is •the domicil of the owner of the property, says : “ No one can seriously doubt that it is competent for any state to adopt such a rule in its own legislation, since it has perfect jurisdiction over all property, personal as well as real, within its territorial limits. Nor can such a rule, made for the benefit of innocent purchasers and creditors, be deemed justly open to the reproach of being founded in a narrow or a selfish policy.” (Story on Gon. of Laws, § 890.) Again, he says : “ every nation, having a right to dispose of all the property actually situated within it, has (as has been often said) a right to protect itself and its citizens against the inequalities of. foreign .laws, which are injurious to their interests.”
Chancellor Kent, in commenting on a kindred subject, namely, the law of contracts, remarks : “But on this subject of conflicting laws, it may be generally observed, that there is a stubborn principle of jurisprudence that will often intervene and act with controlling efficacy. This principle is, that where the lex loci contractus and the lex fori, as to conflicting rights acquired in each, come in direct collision, the comity of nations must yield to the positive law of the land.” (2 Kent’s Com. 599.)
In the case of Moreton agt. Milne (6 Binney, 361), the supreme court of Pennsylvania says, that “ every country has a right of regulating the transfer of all personal property within its territory ; but when no positive regulation exists, the owner transfers it at his pleasure.”
The Louisiana court, in a leading ease on this subject, gives, in the following language, a clear statement of the foundation of this principle : “ The municipal laws of a country have no. force beyond its territorial limits, and when another government permits these to be carried into effect within her jurisdiction, she does so upon a principle of comity. In doing so, care must be taken that no injury is inflicted on her own citizens, otherwise justice would be sacrificed to comity. If a person sends his property within a jurisdiction different from that where he resides, he impliedly *23 submits it to the rules and regulations in force in the country where he places it.”
Apart from the question of authority, let us look at some of the consequences of the doctrine held by the court of New York.
If the judgment rendered against the plaintiff in error is well founded, then the sheriff who served the writ of attachment, the one who sold the property on execution, any person holding it in custody pending the attachment proceeding, the purchaser at the sale, and all who have since exercised control over it, are equally liable.
If the judgment in the state of Illinois, while it protects . all such persons against a suit in that state, is no protection anywhere else, it follows that in every case where personal property has been seized under attachment, or execution against a non-resident debtor, the officer whose duty it was to seize it, and any other person having any of the relations above described to the proceeding, may be sued in any other state, and subjected to heavy damages, by reason of secret transfers, of which they could know nothing, and which were of no force in the jurisdiction where the proceedings were had, and where the property was located. •
Another consequence is, that the debtor of a non-resident may be sued by garnishee process, or by foreign attachment, as.it is sometimes called, and be compelled to pay the debt to some one having a demand against his creditors ; but if he can be caught in some other state, he may be made to pay the debt again to some person who had an assignment of it, of which he was ignorant when he was attached.
The article of the constitution and the act of congress, relied on by the plaintiff in error, if not expressly designed for such cases as. these, find in them occasions for their most beneficent operation.
We do not here decide that the proceedings in the state of Illinois have there the effect which plaintiff claims for them ; because that must remain to be decided after argument, on the merits of the case. But we hold that the effect which these proceedings have there, by the law and usage *24 of that state, was a question necessarily decided by the New York courts, and that it was decided against the claim set up by plaintiff in error, under the constitutional provision and statute referred to, and that the case is, therefore, properly here for review.
The motion to dismiss the writ of error is overruled.